**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerald LEVY (89–5980) and Calvin Black (89–6099),**
**Defendants–Appellants.**

**Nos. 89–5980, 89–6099.**

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1990.

Decided May 25, 1990.

Rehearing Denied in No. 89–6099 June 25, 1990.

---

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., John Fowlkes, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Memphis, Tenn., for U.S.

April R. Ferguson, Asst. Federal Public Defender (argued), Memphis, Tenn., for Gerald Levy and Calvin Black.

Before KEITH and MILBURN, Circuit Judges; and WOODS, District Judge [*].

MILBURN, Circuit Judge.

Defendants-appellants Gerald Levy and Calvin Black appeal their convictions and sentences for aiding and abetting one another in the possession with intent to distribute approximately eighteen grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. For the reasons that follow, we affirm.

I.

On January 25, 1989, officers Mark Dunbar and Jackie Setliff of the Metro Narcotics Unit of the Shelby County Sheriff's Department in Memphis, Tennessee, received a tip from an informant. They then drove to an area of Memphis near Ogden Street and looked for a new, four-door yellow Cadillac occupied by three black males. They were joined in the search by Roger Swatzyna, another officer in the Metro Narcotics Unit.

Soon after the three officers joined up, they saw a new, four-door yellow Cadillac on Ogden Street that was occupied by three black males. The officers surrounded the car as its driver was parking it and approached it with their guns drawn.

Ronald Strickland, a juvenile, was the front-seat passenger. He testified that he

[*] Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation.

opened his door and got out of the car before he saw the officers. He then froze near the front tire on the passenger's side of the car when he saw the officers had their guns drawn. When Strickland opened his door, the interior lights in the car were illuminated.

Officer Swatzyna testified that as he approached the front of the car, he saw the occupant of the back seat make a throwing motion toward the open front passenger's door. Defendant Levy was the occupant of the back seat. Officer Dunbar testified that as he approached the rear of the car, he saw the driver make a throwing motion toward the floor of the car. Defendant Black was the driver.

The officers found a clear plastic bag on the curb immediately outside the open passenger door. The bag contained seventy-four individual nuggets, or "rocks," of crack cocaine. The officers also found ten rocks of crack cocaine on the floor of the car, near or on the driver's side. The seventy-four rocks weighed a total of 15.4 grams, while the ten rocks weighed 2.5 grams.

Levy and Black were indicted on one count of aiding and abetting in the possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. They were tried before a jury on May 16 and 17, 1989, and each was found guilty.

Prior to sentencing, Levy filed a motion challenging 21 U.S.C. § 841(b)(1)(B)(iii), alleging that the phrase "cocaine base" was unconstitutionally vague and that the statute authorized sentences that were unconstitutionally disproportionate to the offense it punished. At his sentencing hearing on July 13, 1989, Levy moved pursuant to section 5K1.1 of the Sentencing Guidelines for a downward departure based upon his cooperation with the police. He also made an offer of proof to support his motion.

The district court denied Levy's motions alleging constitutional infirmities and his motion for a downward departure. The district court noted that section 5K1.1 is triggered only "upon motion of the govern-

ment," and the government had not moved for a downward departure.

The district court sentenced Levy to 63 months imprisonment and Black to 120 months imprisonment. In this appeal, Black and Levy raise the following issues: (1) whether the district court erred in denying defendants' motions for a mistrial based upon alleged hearsay; (2) whether the district court erred in admitting the officers' testimony regarding their pursuit of the defendants; (3) whether the district court erred in admitting evidence identifying the matter taken from the Cadillac as cocaine; (4) whether the district court erred in refusing to instruct the jury that it could find the defendants guilty of the lesser-included-offense of simple possession of cocaine; and (5) whether the district court erred in allowing the government to present evidence to rebut the testimony of Ronald Strickland.

In addition, Levy raises the following issues: (1) whether the district court erred in denying Levy's motion for judgment of acquittal; (2) whether the district court erred in denying Levy's motion to declare 21 U.S.C. § 841(b)(1)(B)(iii) void for vagueness and for disproportionate sentencing; (3) whether the district court erred in refusing Levy's offer of proof to support his motion for a downward departure; and (4) whether the Sentencing Guidelines violate Levy's Eighth and Fourteenth Amendments rights by making no provision for defendants' motions for downward departures based upon substantial assistance/cooperation with police.

## II.

Alleged "evidential errors of a trial court are tested on appeal" under an abuse of discretion standard. *United States v. Rios*, 842 F.2d 868, 872 (6th Cir. 1988) (per curiam) (quoting *United States v. Mahar*, 801 F.2d 1477, 1495 (6th Cir. 1986)). However, a district court's conclusions of law, such as whether proffered evidence constitutes hearsay within the meaning of the Federal Rules of Evidence, are reviewed de novo. *See Whitney v.*

*Brown,* 882 F.2d 1068, 1071 (6th Cir.1989). Where a party fails to make a timely objection, stating the specific grounds for his objection as required by Federal Rule of Evidence 103(a)(1), our review is limited to "plain error." Fed.R.Evid. 103(d).

■ This appeal also involves several issues regarding the district court's denial of defendant's motions for a mistrial. We review a district court's denial of a motion for a mistrial for abuse of discretion. *See United States v. Atisha,* 804 F.2d 920, 925–26 (6th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

### A.

Defendants moved for a mistrial based upon certain remarks the Assistant United States Attorney made in his opening statement. At the conclusion of the statement, and outside the presence of the jury, the defense attorneys argued that the prosecutor's remarks constituted hearsay. Both defense attorneys moved for a mistrial, but the district court denied their motions.

■ Hearsay is defined as testimony "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). As the district court instructed the jury, lawyers' opening statements are not evidence. Thus, by definition, the prosecutor's remarks were not hearsay. Moreover, defendants did not make a contemporaneous objection, but waited until the conclusion of the prosecutor's remarks. Reviewed either for abuse of discretion or plain error, we find the district court's denial of defendants' motion for a mistrial was not erroneous.

### B.

■ Officer Dunbar testified that as a result of a tip he received, he was looking for a new, four-door yellow Cadillac on Ogden Street when he encountered the defendants. The two other officers testified that Officer Dunbar told them that he had received a tip, and as a result of the tip, they were looking for a new, four-door yellow Cadillac on Ogden Street. At the conclusion of all the officers' testimony, defendants objected to the testimony about the tip as hearsay. The district court overruled their objections. We agree.

The officers' testimony was not offered to prove the truth of the informant's remarks, and none of the officers testified about the contents and details of the tip. Instead, the officers' testimony regarding the tip was offered to show what they were looking for, and why. Thus, by definition, the contested testimony was not hearsay. Additionally, neither defense attorney offered a contemporaneous objection to the alleged hearsay. Whether reviewed for abuse of discretion or plain error, we find the district court's decision to overrule defendants' objections to the officers' testimony was not erroneous.

### C.

The officers put the plastic bag of rocks of crack cocaine in one evidence bag and the loose rocks in another. Officer Setliff testified that he took a single rock from one of the evidence bags—he did not remember which one—and sent it to a toxicology lab, where it was identified as cocaine.

The defense attorneys objected to admission of the evidence on grounds of a "broken chain of custody." They argued that two separate "units" of cocaine were seized in the search—the bag on the curb and the loose rocks on the car floor—and because Officer Setliff could not remember which unit provided a sample that was identified as cocaine, the government could not show which unit was cocaine. The district court denied the objections on the grounds that the sample that was tested was a representative sample taken from all the seized cocaine and defendants' objections were based upon their interpretation of the evidence.

■ Absent a clear showing of abuse of discretion, challenges to the chain of custody go to the weight of evidence, not its admissibility. *See United States v. Lopez,* 758 F.2d 1517, 1521 (11th Cir.1985), *cert. denied,* 474 U.S. 1054, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986); *United States v. Lott,* 854 F.2d 244, 250 (7th Cir.1988); *United*

*States v. Shackleford,* 738 F.2d 776, 785 (7th Cir.1984). Defendants do not attack the chain of custody in the traditional sense, however, as they do not dispute that the cocaine entered into evidence has been in the officers' custody from the time it was seized. Rather, defendants' objections are anchored in their defense theory that each was possibly guilty only of simple possession of the separate units of cocaine.

■ We agree with the district court that defendants' objections have nothing to do with the admissibility of the evidence. This is made obvious by the fact that defendants do not argue that Officer Setliff's inability to remember which evidence bag was sampled renders the cocaine inadmissible. Rather, they argue that his inability to trace the sample to a specific unit destroys the government's ability to trace and identify the units of cocaine into a particular defendant's possession. Yet this becomes a critical hole in the government's case only if one rejects the government's theory that the defendants aided and abetted each other in the joint possession of all the cocaine and believes the theory of simple possession of separate units.

Defendants' citations to the decisions in *United States v. McFadden,* 458 F.2d 440 (6th Cir.1972), and *United States v. Robinson,* 367 F.Supp. 1108 (E.D.Tenn.1973), are not persuasive, as they do not stand for the propositions for which they are cited, and to the extent that they apply to this case, both support the district court's ruling. Thus, we conclude that defendants have failed to show that the district court abused its discretion in admitting the cocaine seized from the car into evidence.

### D.

■ Defendants argue that they were entitled to a jury instruction on the lesser-included-offense of simple possession of cocaine. "The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.'" *Hopper v. Evans,* 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367

(1982) (quoting *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973)).

■ Only defendant Black's attorney requested a lesser-included-offense instruction. However, we agree with the district court that neither defendant in this case was entitled to an instruction on the lesser offense of simple possession because there was no evidence produced at trial that would have allowed a rational trier of fact to determine that out of the three occupants of the car, Levy and Black each possessed a separate unit. Moreover, there was no evidence that would have permitted a rational trier of fact to determine which unit each defendant possessed.

### E.

Defendants called Ronald Strickland as a hostile witness, and in response, the government recalled Officer Dunbar in rebuttal. When Officer Dunbar responded to a question about the disposition of the juvenile case against Strickland that arose from the search of the Cadillac, Levy's counsel asked, "Your Honor, is this proper rebuttal?" The district court permitted Officer Dunbar to continue testifying. Officer Dunbar contradicted several things that Strickland had said about the events that occurred after the officers stopped the Cadillac. It appears that Strickland's juvenile case was never mentioned again.

■■ On appeal, *both* defendants argue that the district court erred in allowing the government to rebut Strickland's testimony because he was a hostile defense witness. Assuming that Levy's counsel's ambiguous question constituted a "timely objection ... stating the specific ground of objection," Fed.R.Evid. 103(a)(1), we dispose of this issue based upon its complete lack of merit. "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Papia,* 560 F.2d 827, 848 (7th Cir.1977). Determining the use and scope of rebuttal evidence lies within the broad discretion of the district court. *See United States v.*

*Goodwin,* 770 F.2d 631, 638 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986).

■ Officer Dunbar's testimony contradicted much of Strickland's. Moreover, defendants point to no rule, and no rule can be found, that allows a defendant to preempt a prosecutor's right to present rebuttal evidence by designating a witness as "hostile." Thus, defendants have failed to show that the district court abused its discretion in admitting Officer Dunbar's rebuttal testimony.

### III.

### A.

■ Levy moved for a judgment of acquittal, arguing that the evidence was insufficient to support a verdict of guilty. On appeal, he presents his "chain of evidence" arguments again, and also argues that the testimony of the narcotics officers was of questionable credibility. It is well-established that in deciding a motion for judgment of acquittal, neither we nor the district court are to make independent determinations regarding witnesses credibility or the weight that should be accorded to the evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Seen within this scope of review, it is clear that Levy's Rule 29 motion was without merit, as it is grounded upon arguments concerning witness credibility and the weight that should be accorded to certain exhibits of evidence.

### B.

■ In the Anti–Drug Abuse Act of 1986, Congress amended 21 U.S.C. § 841(b)(1)(B) to provide longer sentences for offenses involving mixtures weighing 500 grams or more that contain cocaine hydrochloride (powder) or mixtures weighing 5 grams or more that contain cocaine base. It is undisputed that Congress amended the statute out of concern that cocaine base is "more dangerous to society than cocaine [powder] because of crack's potency, its highly addictive nature, its affordability, and its increasing prevalence."

*United States v. Buckner,* 894 F.2d 975, 978 (8th Cir.1990).

Levy argues that the 1986 amendments are void for vagueness. It is established that

> due process requires a penal statute to "define [a] criminal offense with sufficient definiteness that ordinary people understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." This "void for vagueness" doctrine, however, does not mean a statute is unconstitutionally vague where "Congress might, without difficulty, have chosen 'clearer and more precise language' equally capable of achieving the end which it sought." Finally, where the first amendment is not implicated, a "void for vagueness" challenge must be unconstitutional as applied to the defendant and "must be examined in light of the facts of the case at hand."

*United States v. Barnes,* 890 F.2d 545, 552 (1st Cir.1989) (citations and footnote omitted), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).

Levy asserts the 1986 amendments fail to satisfy the standards of *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), notice and enforcement. The district court rejected Levy's challenges, and we agree. The *Kolender* standard first demands that criminal statutes give ordinary people notice of what conduct is prohibited. Levy asserts that Congress has failed to define "cocaine base" with the specificity required of criminal statutes. He introduced into the record testimony by forensic toxicologist H. Steve Nichols, who testified for the defense in another matter. Nichols was furnished with a copy of the decision in *United States v. Brown,* 859 F.2d 974 (D.C.Cir. 1988). In that opinion, the D.C. Circuit defined cocaine base in the nomenclature of organic chemistry as "any form of cocaine with the hydroxyl radical; 'cocaine base' excludes, for example, salt forms of cocaine." *Id.* at 975–76. Nichols testified that the D.C. Circuit's definition of cocaine base was both true and "not-so-true" be-

cause its chemical analysis of the molecular structure of acids was incomplete.

Levy recognizes the congressional intent behind the insertion of the phrase "cocaine base" was to impose stiffer sentences upon those who traffic in crack cocaine. He argues, however, that if Congress intended to enhance the penalty provisions of section 841 to be aimed at crack cocaine, it should have specified the target. Based upon these two arguments, we are not clear whether Levy believes that Congress should have defined "cocaine base" in extensive and definitive chemical notation, or whether it should have filled the statute with the slang names of drugs it intended to target, or both.

The flaw in Levy's statutory analysis is that he engages in it as if the 1986 amendments and the phrase cocaine base render criminal, conduct that would otherwise be legal. Section 841(b)(1)(B), however, *is a penalty provision.* As such, it did not change the substantial elements of the offense of the possession of cocaine with the intent to distribute. Rather, it lengthened the penalties the federal law already imposed for cocaine trafficking. Statutes are not defective merely because they expose defendants to the risk that legally significant factors within their criminal conduct may trigger enhanced statutes. *See United States v. Feola,* 420 U.S. 671, 684–86, 95 S.Ct. 1255, 1263–65, 43 L.Ed.2d 541 (1975) (upholding federal statute that makes assaulting a federal officer a federal offense regardless of whether the defendant knew of the victim's identity); *United States v. Holland,* 810 F.2d 1215, 1222–24 (D.C.Cir.) (upholding the constitutionality of 21 U.S.C. § 845a, the "schoolyard statute" that provides for enhanced penalties for selling drugs within 1,000 feet of an elementary or secondary school regardless of whether the seller knew he was within the prescribed zone), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Falu,* 776 F.2d 46, 49–50 (2d Cir.1985) (same).

In broad terms, cocaine base and cocaine hydrochloride may be distinguished by their texture and chemical composition. Cocaine hydrochloride is water soluble, formed in crystals or flakes, and is generally snorted by users. Cocaine base is not water soluble, is concentrated in rock-hard forms of various sizes, and is generally smoked. *See Barnes,* 890 F.2d at 552–53; *Brown,* 859 F.2d at 975–76. Thus, the phrase cocaine base defines a substance that is distinguishable from other forms of cocaine based upon appearance, texture, price, means of consumption, the character and immediacy of the effects of use, and chemical composition. *See Buckner,* 894 F.2d at 978 n. 9. Levy's "proof" that the *Brown* court's chemical definition is incomplete is hardly grounds to render the statute invalid, for even if his proof were true, the Constitution does not require that statute to be drafted with absolute scientific precision. We find the statute, as drafted, presents no question as to the substance Congress described as cocaine base.[1]

As of this writing, every reported federal appellate decision on this vagueness challenge to the notice provided by the phrase cocaine base has rejected it as groundless. *See United States v. Barnes,* 890 F.2d at 552–53; *United States v. Williams,* 876 F.2d 1521, 1525 (11th Cir.1989); *United States v. Brown,* 859 F.2d at 975–76; *United States v. Smith,* 840 F.2d 886, 888–89 (11th Cir.), *cert. denied,* 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988); *United States v. Collado–Gomez,* 834 F.2d 280, 281 (2d Cir.1987) (per curiam), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Like those courts, we find Levy's vagueness challenge to be without merit.

Levy next argues that the statute fails to satisfy the requirement that a statute be drafted "in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). He argues that because the statute

---

**1.** We also reject Levy's assertion that Congress should have specifically named its target in the statute. The fact that a type of contraband may have various nicknames on the street does not render a statute punishing possession of that contraband invalid simply because it fails to list all of the then-current nicknames.

applies to offenses involving *mixtures* weighing five grams or more that contain cocaine base, "virtually all forms of cocaine that are not cocaine salt are now capable of being classified as 'cocaine base'" for the purpose of enforcing the statute. Levy Brief at 30. As a result, Levy argues, federal prosecutors in future cases involving mixtures of cocaine base and other substances now have the unfettered power to prosecute a defendant either for possessing cocaine hydrochloride or cocaine base.

Levy's interpretation of the statute is misguided because, as we explained above, it is a penalty provision. Under section 841(b)(1)(B), *the district court* determines the quantity and type of controlled substance for the purpose of sentencing. If the district court determines that the defendant qualifies for an enhanced sentence, "such person shall be sentenced" to the longer term. *See* 21 U.S.C. § 841(b)(1)(B); *Barnes*, 890 F.2d at 551 n. 6; *United States v. Gohagen*, 886 F.2d 1041, 1043 (8th Cir.1989) (per curiam). Levy apparently sees the sentence-enhancing provisions as a tool that a prosecutor could use in a future case for coercive plea bargaining. His concerns, however, are aimed at a hypothetical to which the sentencing statute does not apply. Moreover, Levy's challenge must also fail because he has neither argued nor shown that it is impermissibly vague with respect to himself and its enforcement in his case. *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

### C.

■ Levy next attacks the Anti–Drug Abuse Act of 1986 on the ground that it violates the Eighth Amendment prohibition against cruel and unusual punishment. The statute, and the Sentencing Guidelines enacted pursuant to it, provide enhanced sentences for those defendants convicted of offenses involving five grams or more of a mixture containing cocaine base or 500 grams or more of a mixture containing cocaine hydrochloride. Levy argues that because there is no proof that cocaine base is 100 times more powerful than cocaine

hydrochloride, this 100:1 ratio is unconstitutionally disproportionate.

To date, Levy's argument has been rejected by four circuits. *See United States v. Buckner*, 894 F.2d at 978–980; *United States v. Colbert*, 894 F.2d 373, 374–75 (10th Cir.1990); *United States v. Cyrus*, 890 F.2d 1245, 1248 (D.C.Cir.1989); *United States v. Malone*, 886 F.2d 1162, 1166 (9th Cir.1989). We join these circuits in rejecting this challenge to the statute. As the D.C. Circuit has explained succinctly:

> Appellant argues that the substantially higher term for cocaine base possession violates the eighth amendment prohibition against cruel and unusual punishment because it is disproportionate to the crime. This argument is baseless. There have been only three recognized instances of disproportionality rising to the level of an eighth amendment violation. These involved condemning a man to death for a non-homicide crime, imposing life without parole for a nonviolent recidivist who passed a bad check for $100, and sentencing a man in the Philippines to 15 years hard labor for falsifying a government form. A ten-year sentence for drug possession simply does not approach the same level of gross inequity.

*Cyrus*, 890 F.2d at 1248 (citations omitted).

### D.

The Sentencing Guidelines provide in part:

> *Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

Section 5K1.1 (emphasis added.)

At his sentencing hearing, Levy argued that under section 5K1.1, he was entitled to a downward departure because he had cooperated with law enforcement officers after his arrest. Levy also made an offer of proof to support his section 5K1.1 motion. The government, however, did not file a section 5K1.1 motion on Levy's behalf. The district court declined Levy's offer of

proof and denied his "motion" on the ground that only the government may move for downward departures under section 5K1.1.

■ On appeal, Levy makes the bare assertion that the district court abused its discretion in refusing to entertain his offer of proof. He seems to argue that the district court had a duty to consider granting him a downward departure because he felt he had cooperated with police after he was arrested. However, as the district court explained to Levy, and as the Guidelines state unambiguously, the district court may consider a downward departure pursuant to section 5K1.1 only "upon motion of the government." Because the government did not file such a motion, the district court had no duty or responsibility to entertain Levy's motion or his offer of proof to support it.

### E.

In his final argument, Levy insists that the Sentencing Guidelines violate his constitutional rights to due process and freedom from cruel and unusual punishment because they do not provide defendants with the opportunity to present proof of cooperation and seek a downward departure under section 5K1.1. He argues that if a government motion is required before a district court can consider proof of mitigating circumstances, the Guidelines give prosecutors unconstitutionally broad discretion in determining which defendants will receive the benefit of downward departures for cooperating.[2]

■ We note first that the Supreme Court has held that the Constitution does not require individualized sentencing in non-capital cases, *see Lockett v. Ohio*, 438 U.S. 586, 602, 98 S.Ct. 2954, 2963–64, 57 L.Ed.2d 973 (1978), and therefore, Levy does not have a constitutional right to

present evidence of mitigating circumstances prior to his sentencing. *See United States v. Vizcaino*, 870 F.2d 52, 54–56 (2d Cir.1989); *United States v. White*, 869 F.2d 822, 825 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).

We also note that this same challenge has been rejected by the six circuits to consider it to date. *See United States v. Francois*, 889 F.2d 1341, 1343–44 (4th Cir. 1989); *United States v. Grant*, 886 F.2d 1513, 1514 (8th Cir.1989); *United States v. Huerta*, 878 F.2d 89, 91–94 (2d Cir.1989); *United States v. Ayarza*, 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); *United States v. White*, 869 F.2d at 828–29; *United States v. Musser*, 856 F.2d 1484, 1487 (11th Cir.1988) (per curiam), *cert. denied,* —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989).

Levy fails to recognize that "sentencing is not inherently or exclusively a judicial function," *Geraghty v. United States Parole Comm'n*, 719 F.2d 1199, 1211 (3d Cir. 1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984), and that "[d]ue process is not offended by a guideline that narrows the discretion of a sentencing court." *Grant*, 886 F.2d at 1514; *see also Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 675, 102 L.Ed.2d 714 (1989) (Congress permissibly limited judicial discretion in sentencing through the creation of the Sentencing Commission).

■ Levy also fails to consider that the prosecutor only has the power *to move* for a departure, and the decision of whether to depart under section 5K1.1 lies with the district court. Moreover, because defendants have no constitutional right to the benefit of downward departures under the Guidelines, they cannot challenge the manner in which Congress has provided it. Finally, the requirement of a government

---

**2.** While neither party has raised this point, we note that denial of Levy's due process challenge to section 5K1.1 did not necessarily prevent him from presenting his evidence of cooperation to the district court. As the Second Circuit pointed out in *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110

S.Ct. 845, 107 L.Ed.2d 839 (1990), nothing in the Guidelines forecloses the possibility that the district court will consider "a defendant's cooperation as a mitigating factor in deciding what sentence within the applicable range designated by the Guidelines is appropriate, whether or not the government agrees."

motion "is predicated on the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance." *White,* 869 F.2d at 829.[3]

## IV.

Although defendants Levy and Black have raised several issues challenging the validity of their convictions, our examination of their claims has led us to conclude that none of their arguments, either considered separately or in the aggregate, have any merit. Accordingly, for the foregoing reasons, the defendants' convictions are AFFIRMED.

---

**3.** Several courts have speculated whether a defendant might raise a successful due process challenge where a prosecutor refuses to move for a departure under section 5K1.1 in bad faith. *See United States v. Coleman,* 895 F.2d 501, 504 n. 6 (8th Cir.1990); *Grant,* 886 F.2d at 1514. In this case, however, Levy has not accused the government of such conduct and therefore, we reserve our opinion on that question for another day.