48 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Herbert MICOU, Robert Johnson, David Christunas, and Kenneth
Christunas, Defendants-Appellants.
 Nos. 93-2161, 93-2163, 93-2162, 94-1070.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1995.
 
 Before: JONES and BATCHELDER, Circuit Judges, and BECKWITH, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions and sentences on charges of conspiracy to distribute marijuana. For the reasons stated herein, we AFFIRM the decision of the district court.
 
 I.
 
 2
 On April 13, 1992, twelve persons, including Appellants in this case, Herbert Micou, Robert Johnson, David Christunas and Kenneth Christunas, were indicted for conspiracy to distribute marijuana and related charges. Six of the charged defendants pled guilty prior to trial. Trial against the remaining six defendants began on March 15, 1993.
 
 
 3
 The government called 22 witnesses in its case in chief. Among the witnesses and evidence presented were the following. Missouri State Highway Patrol Officer Wade Stuart testified that on June 18, 1990 he stopped a vehicle driven by Patrick Ogle. Patrick Ogle consented to a search of the trunk where 200 pounds of marijuana was found. Patrick Ogle agreed to cooperate with the police and make a controlled delivery to Michigan. Ogle testified that upon arrival in Detroit he checked into a motel and called David Christunas. David Christunas came to the motel and left in the car Ogle had driven from Texas.
 
 
 4
 Michigan State Police officers observed Christunas drive from the motel to Herbert Micou's home where the vehicle pulled into the garage and the door was shut. About forty minutes later the vehicle left the residence. Shortly thereafter officers stopped the vehicle and found only 100 pounds of marijuana still in the trunk. Christunas was arrested.
 
 
 5
 Police officers executed search warrants for both Micou's and Christunas' residences. At Micou's home, officers seized approximately 100 pounds of marijuana, three firearms, and about $13,000 cash. At David Christunas' residence, officers seized three firearms, a pound of marijuana, and approximately $293,000 cash.
 
 
 6
 Lawrence Zakalowski and Susan Sancho testified that Ken Christunas was Gary Sancho's[1] supplier of marijuana. Several bank employees testified with regard to safety deposit boxes that Ken Christunas had at various Detroit area banks. In one of these safety deposit boxes, $74,000 was found, after it had been opened by bank personnel when Christunas failed to make rental payments.
 
 
 7
 Several witnesses testified that Defendant Ken Christunas would purchase marijuana in Florida for shipment to Michigan. Robert Michaelson testified that in 1983-84, he loaded marijuana into vehicles in Florida and he had seen David Christunas in Florida about four times during that period. John Fredrickson testified that in 1985-86 he drove quantities of marijuana between Florida and Michigan and Michigan and Texas. Carole Bowen testified that she began a broker-supplier relationship with David Christunas using John Fredrickson and Thomas Christunas as drivers for transporting marijuana from Texas to Michigan.
 
 
 8
 On April 14, 1993, the jury returned guilty verdicts against the four appellants; Arthur Ricky Brayman and James Christunas were acquitted. Appellants received the following sentences: Micou--97 months for conspiracy to distribute marijuana; Johnson--210 months for conspiracy to distribute marijuana; David Christunas--182 months for conspiracy to distribute marijuana and possession with intent to distribute marijuana; Ken Christunas--292 months for operating a continuing criminal enterprise and 240 months for possession with intent to distribute marijuana and conspiracy to import marijuana.
 
 
 9
 Defendants have now appealed and raise numerous issues. We find that none of the issues raised, however, warrants reversing any determination of the district court.
 
 II.
 A.
 
 10
 Micou first argues that reversible error occurred when certain evidence and testimony was admitted at trial. We disagree.
 
 
 11
 This court reviews the district court's decisions to admit or exclude testimony or other evidence for an abuse of discretion. United States v. Bonds, 12 F.3d 540, 554 (6th Cir.1993); United States v. Rios, 842 F.2d 868, 872 (6th Cir.1988), cert. denied, 488 U.S. 1031 (1989). Moreover, Federal Rule of Criminal Procedure 52(a) instructs this court that in reviewing this case, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We first find that the district court did not abuse its discretion in admitting evidence of the firearms at trial. We further find that even if the district court had abused its discretion in admitting this evidence, it is clear that given the substantial other evidence against Micou, the admission of this evidence was at most harmless error. See United States v. Baro, 15 F.3d 563, 568 (6th Cir.) (extensive trial testimony supporting evidence of defendant's guilt made admission of tainted evidence harmless error) (citing Chapman v. California, 386 U.S. 18, 23-24 (1967)), cert. denied, 115 S.Ct. 285 (1994).
 
 
 12
 Micou next argues that a statement by Fredrickson concerning the registration of a 1985 Lincoln Town Car into which Fredrickson had loaded marijuana was inadmissible hearsay. We find that even if this testimony did constitute hearsay, other evidence made its admission harmless error. The government introduced evidence that Micou had purchased a 1985 Lincoln Town Car. Fredrickson legitimately testified that he had loaded marijuana into a 1985 Lincoln Town Car. Approximately 100 pounds of marijuana and $13,000 in cash were found in Micou's house.
 
 B.
 
 13
 Micou and David Christunas argue that the district court erred in denying their motion to dismiss the indictment without holding an evidentiary hearing. Whether to hold an evidentiary hearing on an issue is a matter within the district court's discretion. This court reviews matters within the discretion of the district court for an abuse of discretion. United States v. Frost, 914 F.2d 756 (6th Cir.1990). The district court did not abuse its discretion in denying Micou and David Christunas' motion to dismiss the indictment for violation of the Double Jeopardy Clause, without holding an evidentiary hearing, because the defendants' assertions of fact, even if true, did not entitle them to relief.
 
 
 14
 The Double Jeopardy Clause is not implicated when a conviction for a substantive crime is followed by a prosecution for conspiracy to commit that substantive crime. See United States v. Felix, 112 S.Ct. 1377, 1384 (1992) ("a substantive crime, and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes"). The district court did not abuse its discretion in denying an evidentiary hearing on this issue.
 
 C.
 
 15
 As his final issue, Micou argues that evidence of the items seized from his residence[2] on June 19, 1990, should have been suppressed because the search warrant under which the items were seized lacked probable cause. In summary, the affidavit underlying the search warrant stated that the affiant had received a tip that a car under surveillance contained marijuana; a trained dog had detected narcotics in the trunk of the car; a person came to the motel in one car, then left in the suspect car; the suspect car was then driven to Micou's residence and parked in the garage that was attached to the house. Based on this information a judicial officer issued a search warrant for Micou's residence. Micou does not argue that this information does not support a finding of probable cause. Instead, he argues that had the judicial officer been informed that the car had subsequently left Micou's house that the judicial officer would have found probable cause to be lacking. The argument is without merit. When new circumstances bring into question the original finding of probable cause, the officers seeking the warrant must bring new information to the magistrate's attention. United States v. Bowling, 900 F.2d 926, 933 (6th Cir.), cert. denied, 498 U.S. 837 (1990). If, however, this court finds that a neutral magistrate would still have found probable cause to exist had she been apprised of the new information, the the fruits of the warrant are not to be suppressed. See id. at 933-34. In the instant case, the additional facts that would have been brought to the magistrate's attention included the fact that a later stop of the car that left Micou's residence revealed that half of the marijuana in the car had been removed. We find that knowledge of additional facts in this case would not have dissipated probable cause.
 
 D.
 
 16
 Defendant Johnson raises two issues: whether the district court erred in denying his motion for severance, and whether certain closing arguments of the prosecutor amounted to reversible error. We find no error on the part of either the district court or the prosecutor.
 
 
 17
 At the close of the government's case-in-chief, Johnson's counsel stated that Johnson wished to present a defense of withdrawal from the conspiracy, and based on his desire to present this defense, he requested bifurcation.[3] Johnson's counsel also stated that Ken Christunas would testify on behalf of Johnson if bifurcation were granted.[4] The district court denied Johnson's motion for severance. This court reviews a district court's grant or denial of a motion for severance for an abuse of discretion. United States v. Moreno, 933 F.2d 362, 369 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). We find that the district court properly applied this court's teaching in United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987) (quoting United States v. Butler, 611 F.2d 1066, 1071 (5th Cir.), cert. denied, 449 U.S. 830 (1980)), cert. denied, 486 U.S. 1034 (1988), in denying Johnson's motion for severance.
 
 
 18
 Also at issue is a statement by the prosecutor concerning accountability. The statement did not amount to an improper effort to arouse the passion and prejudice of the jury that would warrant reversal of defendants' convictions. In United States v. Solivan, 937 F.2d 1146 (6th Cir.1991), the prosecutor had commented to the jury "I'm asking you to tell her and all of the other drug dealers like her that we don't want that stuff...." Id. at 1152. In the instant case, the prosecutor made no reference to other drug dealers, but only addressed the conduct of the defendants. As such, the statement was no more than "an innocuous reference to the community or societal needs to convict guilty person." Id. at 1155.
 
 E.
 
 19
 In addition, David Christunas argues that the district court erred (1) in denying his motion to suppress evidence seized at his residence, and (2) in enhancing his base offense level by applying U.S.S.G. Sec. 2D1.1(b). We disagree.
 
 
 20
 Christunas argues that the affidavit underlying the warrant failed to establish probable cause to search his residence. A reviewing court accords great deference to a lower court's independent determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983); Massachusetts v. Upton, 466 U.S. 727 (1984). This court will reverse such determinations only if they are clearly erroneous. United States v. Williams, 962 F.2d 1218 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992). We find that the district court's holding that the affidavit adequately established probable cause is not clearly erroneous.
 
 
 21
 The evidence seized from David Christunas' residence included three firearms, a .357 magnum revolver, a Beretta 6.35 caliber pistol and a Hopkins and Allen Arms revolver, which were found in a locked gun cabinet. In sentencing David Christunas, the district court adopted the government's recommendation to enhance David Christunas' base offense level by two levels pursuant to U.S.S.G. Sec. 2D1.1(b). That guideline provides that when calculating the base offense level for unlawful trafficking or possession of drugs, if a dangerous weapon, including a firearm was possessed, the base offense level is to be increased by 2 levels. U.S.S.G. Sec. 2D1.1(b) (1993). Application Note 3 to this guideline explains that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet."
 
 
 22
 This court reviews the district court's finding of facts for clear error, but reviews application of the guidelines to those facts de novo. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). In deciding to enhance Christunas' sentence pursuant to U.S.S.G. Sec. 2D1.1(b), the district court carefully weighed the testimony regarding the firearms and determined that the presence of the .357 Magnum revolver and the Beretta 6.35 caliber pistol with a clip loaded with eight live rounds was consistent with protection of either drugs or the proceeds of drug activities or funds to be utilized to purchase drugs. The district court was not clearly erroneous in its conclusion. We find that in the absence of a showing that it was clearly improbable that these weapons were connected with Christunas' drug trafficking activities, the district court's application of U.S.S.G. Sec. 2D1.1(b) to enhance Christunas' sentence was appropriate.
 
 F.
 
 23
 Kenneth Christunas raises several issues on appeal. We find that none of the issues warrant reversal of his conviction or sentence.
 
 
 24
 Ken Christunas argues that the district court erred in not disqualifying his defense counsel who had an actual conflict of interest. After full consideration, we find that the circumstances of this case do not support this argument.
 
 
 25
 Ken Christunas' counsel, N.C. Deday LaRene, had an actual conflict of interest in that he had previously represented Susan Sancho and her husband Gary Sancho[5] in contesting a civil forfeiture of their home based on her husband's drug dealing. Susan Sancho was to be, and was, called as a government witness. LaRene brought the potential conflict to the attention of the court, initially pointing out that he would not be able to testify on Christunas' behalf with respect to Susan Sancho's testimony, unless he withdrew as Christunas' counsel. Christunas waived any claim of ineffective assistance of counsel based on LaRene's failure to withdraw as counsel.
 
 
 26
 We are persuaded by the well-reasoned opinion of the Seventh Circuit that has addressed this issue. In United States v. Lowry, 971 F.2d 55 (7th Cir.1992), the court held that defendant had forfeited his claim that his attorney's actual conflicts of interest deprived him of effective assistance of counsel when he waived the conflicts in order to retain his attorney. Id. at 63. The court explained:
 
 
 27
 This is not to say that Lowry's waiver completely bars any ineffective assistance claim, but it does bar any claim based on Schick's alleged conflicts of interest. To hold otherwise would be to render the waiver meaningless; a defendant would lose nothing by waiving his right and sticking with counsel who had a conflict, since he could always allege "ineffective assistance" if convicted.... We have no doubt that Lowry clearly understood the dangers of counsel with a conflict, his rights, and his options, and that he made a knowing and intelligent waiver. That choice is binding.
 
 
 28
 Id. at 63-64. We find it appropriate to apply this rationale to the instant case, and we hold that the district court did not err in accepting Christunas' waiver of his attorney's conflict of interest.[6]
 
 
 29
 After the government had presented its case-in-chief, Ken Christunas requested that the trial be bifurcated so that he could present a withdrawal defense. The district court denied the motion, basing its determination primarily on the grounds that Christunas had not satisfied the test of United States v. Causey. See 834 F.2d at 1287. Having carefully reviewed the record, we find that the district court did not abuse its discretion in making this determination.
 
 
 30
 Ken Christunas also argues that several evidentiary rulings of the judge and certain arguments of the prosecutor, injected error, caused prejudice, and warrant a new trial. We disagree.
 
 
 31
 Christunas argues that the district court erred in admitting certain hearsay statements as exceptions to hearsay under Federal Rule of Evidence 801(d)(2)(E) which allows statements offered against a party that were made by a co-conspirator of the party during the course and in furtherance of the conspiracy. Christunas argues that the contested statements were not made in furtherance of the conspiracy. This court reviews a district court's determination of whether proffered evidence constitutes hearsay de novo. United States v. Levy, 904 F.2d 1026, 1029 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). Upon review of the record, we agree with the district court's determination that the statements could be construed as being made in furtherance of the conspiracy. Furthermore, we note that even if the admission of these statements had been error, in light of all the evidence presented at trial, we find that such errors would have been harmless. See Fed.R.Crim.P. 52(a); Murphy, 763 F.2d at 209-10.
 
 
 32
 We further find that it was not an abuse of the district court's discretion to admit Christunas' tax returns into evidence, nor did certain statements in the prosecutor's closing arguments create prejudice warranting a new trial.
 
 
 33
 Ken Christunas properly made a motion under Federal Rule of Civil Procedure 29, seeking acquittal as to the criminal enterprise count against him on the ground that the government had failed to prove the essential element that Christunas occupied the requisite managerial position with respect to five or more persons, as alleged in the indictment. He appeals the district court's denial of his motion.
 
 
 34
 "It is well settled that the test to be applied by a trial court in determining a defendant's motion for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure is taking the evidence and inferences most favorably to the government, if there is such evidence therefrom to conclude that a reasonable mind might fairly find guilt beyond a reasonable doubt, the issue is for the jury." United States v. Overmyer, 867 F.2d 937, 938 (6th Cir.), cert. denied, 493 U.S. 813 (1989). "An appellate court, in reviewing the trial court's decision regarding a Rule 29 motion, applies the same principles to the record it has before it." Id. Taking all the evidence in the light most favorable to the government and giving the government the benefit of all inferences that may be drawn from that evidence as this court is required to do, we find that there was sufficient evidence for the jury to convict Christunas of managing a criminal enterprise.
 
 
 35
 In sentencing Ken Christunas, the district court adopted the recommendation of the probation department and held Christunas responsible for 25,310 pounds of marijuana, resulting in a base offense level of 36. Christunas argues that his base offense level should have been set no higher than 34 because the evidence at trial demonstrated that the weight calculations relied upon by the district court were fatally flawed by the propensity of the witness, Robert Michaelson, to overestimate by a factor of approximately twenty per cent.
 
 
 36
 We review the district court's factual findings which underlie the application of a guideline provision for clear error. United States v. Zimmer, 14 F.3d 286, 289 (6th Cir.1994); Garner, 940 F.2d at 174. The district court must determine the quantity of drugs attributable to a defendant by a preponderance of the evidence. United States v. Moss, 9 F.3d 543, 552 (6th Cir.1993). Having reviewed the record, we find that the district court's findings of fact on this issue are not clearly erroneous, and its determinations are supported by a preponderance of the evidence.
 
 III.
 
 37
 For the foregoing reasons, we AFFIRM the convictions and sentences of the four defendants.
 
 
 
 *
 The Honorable Sandra S. Beckwith, United States District Court Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Gary Sancho is the deceased husband of Susan Sancho
 
 
 [2]
 The bags of marijuana, three firearms and $13,000 cash
 
 
 [3]
 At the same time, Ken Christunas also requested that the trial be bifurcated so that he could present a withdrawal defense
 
 
 [4]
 In the joint trial, Ken Christunas stood on his Fifth Amendment privilege against self-incrimination, and did not take the stand
 
 
 [5]
 Gary Sancho was killed before the conclusion of the civil forfeiture proceedings
 
 
 [6]
 We note that Christunas' efforts to argue that the holding of the Second Circuit in United States v. Fulton, 5 F.3d 605 (2d Cir.1993), should apply to the instant case is misplaced. In that case, the court did hold that the defendant's waiver of his counsel's conflict of interest was invalid because the district court abused its discretion in not disqualifying trial counsel after the conflict became apparent. 5 F.3d at 612. In that case, however, the conflict that emerged was that defendant's co-conspirator, a government witness, testified that defendant's lead trial counsel had engaged with him in heroin trafficking. The court found that this allegation, which it treated for purposes of the constitutional analysis as true, revealed a per se violation of defendant's Sixth Amendment right to effective assistance of counsel. Id. In the instant case, however, the conflict of interest is not a result of defense attorney's criminal involvement in defendant's criminal activities, and thus no per se violation is present