**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anderson M. THOMPSON,
Defendant–Appellant.**

No. 02–5485.

United States Court of Appeals,
Sixth Circuit.

Jan. 21, 2004.

Paul M. O'Brien, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Stephen B. Shankman, Fed., Public Defender, April R. Goode, Asst. F.P. Defender, Office of the Federal Public Defender, Memphis, TN, for Defendant–Appellant.

BEFORE: KRUPANSKY, MOORE, and ROGERS, Circuit Judges.

KRUPANSKY, Circuit Judge.

The defendant-appellant, Anderson Murl Thompson, Jr. ("Thompson"), has assailed the trial court's judgment of conviction and sentence entered following a jury's guilty verdict on weapons charges, on the rationale that the presiding judge purportedly abused his discretion by permitting allegedly prejudicial hearsay testimony by the arresting officer.

On October 1, 2000, a Memphis, Tennessee police officer, John Byars ("Byars"), while assisting the department's Robbery Unit in a high-crime vicinity, was approached by two "excited" men who asserted that, moments earlier, a gold-colored Chevrolet Blazer containing an African–American male passenger had pulled alongside their vehicle; the passenger then aimed a shotgun towards their faces while verbally threatening their lives. The victims reported that the Blazer proceeded into the Marina Cove Apartments parking lot. In response, Officer Byars immediately drove to that location. He observed a golden Chevrolet Blazer, occupied by a black female driver (later identified as Shamelle Clifton) ("Clifton") and a black male passenger (later identified as the defendant Thompson), exit the apartment complex.

The constable followed the Blazer to the Winchester Square Townhomes. After Clifton parked her vehicle, Thompson summoned a young male to approach it. As the defendant handed an object through the passenger side window to that youth, Officer Byars ordered both of its occupants to exit the Blazer. The passenger initially resisted that order. As the peace officer moved closer to the vehicle, he observed a modified long arm stowed between the passenger seat and door. The patrolman also perceived the defendant's evident nervousness, and that he was "eyeing" the firearm. Ultimately, Thompson peacefully exited the Blazer and submitted to arrest. Officer Byars then seized the weapon, which was a loaded sawed-off Remington 870 twelve-gauge shotgun. Although Thompson initially denied ownership or knowledge of that weapon, he ultimately admitted his ownership thereof to the arresting officer.

On October 1, 2001, Thompson proceeded to a jury trial on a two-count indictment by which the government charged that he had illegally possessed the shotgun (1) following a felony conviction in violation of 18 U.S.C. § 922(g), and (2) in an altered state absent its proper registration as required by 26 U.S.C. §§ 5841 & 5861(d). On the following day, October 2, 2001, the jurors returned guilty verdicts on both counts. On March 26, 2002, the sentencing court imposed two concurrent terms of 120 months in penal custody, to be followed by three years of supervised release. On April 2, 2002, Thompson noticed a timely appeal.

■ On review, the defendant has postulated that the trial court abused its discretion by denying his pre-trial motion to exclude any testimony by Officer Byars concerning the statements made to him by the two eyewitnesses who had accused Thompson of aiming his shotgun at them. Those two men were not scheduled to testify. In support of his motion, the defendant argued that the subject out-of-court statements constituted inadmissible hearsay; and further were unduly prejudicial as unnecessarily exposing the jury to purported "evidence" that he had committed an uncharged serious felony, namely aggravated assault, in the absence of any opportunity to cross-examine the accusers. The district judge denied the suppression motion, ruling that the subject statements either were not hearsay or were admissible as "excited utterances," and that any potential prejudicial effect of the assailed

testimony could, and would, be neutralized by an appropriate limiting jury instruction read during trial.[1]

A trial court's evidentiary rulings are usually examined for abuse of discretion. *United States v. Mack,* 258 F.3d 548, 553 (6th Cir.2001). An abuse of discretion occurs "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses [an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995). (Quotation marks and citations omitted; correction in brackets). On review of a trial adjudicator's decision to admit proffered evidence irrespective of an opposing party's objection, the Sixth Circuit "look[s] at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin,* 729 F.2d 384, 389 (6th Cir.1984).

Applying those standards to the matter *sub judice,* the instant trial court did not abuse its discretion by denying Thompson's motion to exclude the contested portion of Officer Byars' testimony. The district judge's cautionary charge sufficiently directed the jurors that they were to consider that testimony only as evidence of the officer's purpose for initiating his investigation of the gold Chevy Blazer and its occupants, rather than as proof that any person had in fact leveled a firearm in anyone's face. *See, e.g., United States v. Levy,* 904 F.2d 1026, 1029 (6th Cir.1990) (positing that officers' testimony to explain why they undertook an investigation after receiving a tip is not hearsay under Fed. R.Evid. 801(c)).

---

1. At trial, when Office Byars testified that two black males had approached his squad cruiser to inform him "that a guy had put a shotgun in their faces and said he was going to kill them," the presiding jurist interjected his cautionary jury charge:

> THE COURT: Now wait just a minute. Ladies and gentlemen, I need to give you a limiting instruction. You have just heard this officer testify, and he probably has some further testimony as to what these two people said. Now, of course, that would be—ordinarily, that would be hearsay. But you may not consider it for the truth of the matter that is contained in the statement; that is, that two black males walked up and stuck a gun in his face. You don't consider it for the truth of what is contained in the statement, but you can consider it in terms of why this officer took further actions based upon that information.
>
> So you are allowed to consider it for that purpose, but not for the truth of the matter contained in the statement itself. That's a sort of a legal distinction, but one you have to make.

Because Thompson failed to object at trial to any aspect of that *in limine* jury charge, scrutiny thereof is for "plain error." Fed. R.Crim.P. 52. "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice." *United States v. Krimsky,* 230 F.3d 855, 858 (6th Cir.2000). "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.' If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton,* 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002). (Citations and brackets omitted).

On review, Thompson has contended, for the first time, that the subject limiting instruction was potentially confusing and prejudicial, because its language was not as clear as it might have been. However, the overall message of the subject charge was accurate and sufficient for its intended purpose. Moreover, the defendant has conceded that, if any confusion was caused by the language of the *in limine* jury charge, it was dispelled during the prosecution's closing argument, in that the United States "did inform the jury of the limitations of those [out-of-court] statements." Appellant's brief, page 15. Accordingly, no reversible "plain error" resided in the trial court's cautionary jury charge.

■ Furthermore, even assuming *arguendo* that one or more jurors nevertheless construed the faulted testimony as direct proof that Thompson had in fact trained his illegal firearm at the two out-of-court declarants, that inference would be permissible under the "excited utterance" hearsay exception. *See* Fed.R.Evid. 803(2); *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983) ("Three elements are necessary for the admission of an excited utterance. First, there must be an event startling enough to cause nervous excitement. Second, the statement must be made before there is time to contrive or misrepresent. And, third, the statement must be made while the person is under the stress of the excitement caused by the event."). Accordingly, because Officer Byars' undisputed testimony evinced that the speakers were in the requisite state of mind, their out-of-court statements were valid proof of the truth of the matters asserted, irrespective of their failure to take the witness oath and their insulation from cross-examination by the defendant. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

■ Alternatively, the defendant has argued that, *even if* Officer Byars' testimony at issue did *not* run afoul of the hearsay or confrontation rules, it nonetheless should have been excluded because its potential prejudicial impact averredly outweighed its probative value. *See* Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."). The trial court's admission of evidence notwithstanding a Rule 403 objection is assessed for abuse of discretion; the reviewing court should indulge a "maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect." *United States v. Gibbs*, 182 F.3d 408, 429 (6th Cir.1999).

On the subject record, no material possibility exists that Officer Byars' testimony about the eyewitness statements unduly prejudiced the defendant. Thompson had not been charged with using the firearm to threaten anyone, and therefore the jurors made no finding that he had done so. Rather, the jurors found only that he had illegally possessed the modified shotgun. Thompson had *admitted* to Officer Byars that he owned that weapon, and the circumstantial evidence strongly corroborated that concession. Accordingly, the record contained sufficient direct and circumstantial proof to evidence beyond a reasonable doubt that Thompson had possessed the subject weapon, without the need for recourse to any extrajudicial statement(s) about Thompson's contemporaneous deployment of that firearm. Indeed, *even if* Officer Byars' assailed testimony had been *erroneously* admitted as violative of hearsay or Confrontation Clause proscriptions, that hypothetical error would have been harmless and hence non-reversible, because no material possibility exists that the jurors' verdict would have been different in its absence.[2] *See*

---

**2.** Thompson has faulted the trial judge for neglecting, on the record, to conduct the customary three-step examination predicate to the admission of "other acts" evidence under Fed.R.Evid. 404(b). *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999); *United States v. Merriweather*, 78 F.3d 1070, 1074 (6th Cir.1996) (citations omitted). However, as developed herein, the government did not offer any part of Officer Byars' testimony to prove that the defendant had committed the "other bad act" of menacing the lives of the out-of-court-speakers with his shotgun; hence Rule 404(b) was not implicat-

*Ford v. Curtis,* 277 F.3d 806, 808 (6th Cir.), *cert. denied,* 537 U.S. 846, 123 S.Ct. 185, 154 L.Ed.2d 73 (2002).

This reviewing court has carefully examined the trial record, the briefs and all arguments of counsel, and the controlling law. It had identified no reversible error. Accordingly, the conviction and sentence of the defendant Anderson M. Thompson are **AFFIRMED.**

ed. *See, e.g., United States v. Landers,* 39 F.3d 643, 648 (6th Cir.1994) (remarking that "the court below allowed this material [the defendant's stated admissions of other crimes] to be displayed to the jury *not* as Rule 404(b) evidence, but instead as statements relevant to the overall understanding of the otherwise admissible incriminating conversation[.]") (Emphasis in original; brackets added). At

any rate, even if Rule 404(b) applied to this case, and even if the trial court had failed to follow its procedural mandates, that error would have been substantively harmless, because the relevant admitted evidence did not influence the jury verdict adversely against the defendant, for the reasons developed herein.